IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------x
                                                               :
KATHLEEN EASTMAN,                                              :
MARY HENIN, AMANDA HAY,                                        :
and MATTHEW ALLEN,                                             :
individually, and on behalf of all others similarly            :
situated,                                                      :
                     Plaintiffs,                :    CIVIL ACTION
                                                               :
                                                               :    NO. _____
   v.                                                         :
                                                               :
                                                               :    CLASS ACTION
THE CITY OF PHILADELPHIA,                                      :
                                                               :
                     Defendant.                  :
---------------------------------------------------------------x

**COMPLAINT**

1.  Plaintiffs Kathleen Eastman, Mary Henin, Amanda Hay, and Matthew Allen ("Plaintiffs") bring this action against The City of Philadelphia ("the "City" or "Philadelphia") for violations of their civil rights and the rights of the class members under the United States Constitution, pursuant to 42 U.S.C. §1983.  Plaintiffs seek declaratory and injunctive relief on behalf of the class, as well as damages for themselves.

**INTRODUCTION**

2.  Philadelphia has a policy euphemistically called "courtesy towing," under which vehicles legally parked on the City's streets may be towed and relocated to another spot without prior notice to the vehicle's registered owner or operator (the "Relocation Program").  The Relocation Program fails to provide adequate post-relocation notice or fair and adequate procedures for owners to locate and recover their vehicles after they have been relocated.  As a result, Plaintiffs and the class members have been unreasonably and arbitrarily deprived of their

{00219038 }

possessory interests in access to and use of their vehicles under the Fourth Amendment and without due process as required by the Fourteenth Amendment.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over the Plaintiffs' claims under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 1981, 1983, and 1988.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), because the Defendant is in this district, and the acts and occurrences giving rise to the claims took place in this district.

## PARTIES

5. Plaintiff Kathleen Eastman ("Plaintiff Eastman") is a resident of Pennsylvania.

6. Plaintiff Mary Henin ("Plaintiff Henin") is a resident of Pennsylvania.

7. Plaintiff Amanda Hay ("Plaintiff Hay") is a resident of Pennsylvania.

8. Plaintiff Matthew Allen ("Plaintiff Allen") is a resident of Pennsylvania.

9. Defendant Philadelphia is a Pennsylvania municipal entity capable of being sued under Pennsylvania law. At all times relevant hereto, the decisions and actions complained of herein were made by the agents of the City pursuant to the City's official policies or customs.

10. The Philadelphia Police Department ("PPD"), a law enforcement agency, is an agency of the City charged with enforcing state and City laws. Philadelphia is the legal entity responsible for the PPD. With respect to the policies, practices, and customs regarding the Relocation Program, the City has acted by and through the PPD and its employees as its duly authorized agents acting within the scope and course of their duties and employment and under the color of state law.

## FACTS

11.     Vehicles parked on City streets may be towed and impounded for specific infractions enumerated in the City Code, and procedures exist for notifying owners of impounded vehicles, including a publicly accessible database to assist owners in locating and recovering their vehicles. The City, however, has failed to provide the same or similar procedures for the Relocation Program.

12.     The Relocation Program authorizes the towing and moving of vehicles that have been lawfully parked under circumstances requiring the moving of the vehicles to allow for, among other things, construction, repairs, emergency work or public gatherings authorized by the City.  At times, temporary "no stopping" signs are posted and vehicles that were legally parked are moved to another location.

13.     The Relocation Program provides no notice to the vehicles' owners or registered operators that their vehicles have been relocated. Vehicle owners return to their legal parking spots only to find their vehicles missing. There is no notice posted at that location advising the vehicle owners or operators where their vehicles have been taken or how they can get information regarding the new location of the vehicle.  The only notice regarding the Relocation Program on how a vehicle owner or operator may retrieve the vehicle is provided on a page buried several levels down on the City's website, which suggests only that a call should be made to the PPD district in which the vehicle had been parked.[1]

---

[1] The following appears on the City's website for those who can find it:

> In some cases, the Philadelphia Police Department will relocate cars without ticketing or impounding them. Your car may get relocated if it is parked in a Temporary No Stopping

14. The process suggested by the website is fully dependent on a system that (a) gives the vehicle owner or operator notice to access the City website, (b) mandates and ensures that the tower of the vehicle immediately provides the PPD with the information as to the new location of the vehicle, and the PPD immediately provides that information to the police district in which the vehicle was towed, and (c) provides for implementation of proper protocols and training of police district personnel to ensure that calls regarding these vehicles are properly responded to with timely and accurate information.

15. As a matter of practice and custom, there has been a systemic lack of adequate notice to vehicle owners and operators regarding the City website and how to locate their vehicles, failure of towers and the PPD to provide timely and adequate notice of the new location of the vehicle, and a lack of adequate training and supervision of police personnel to ensure that owners and operators are provided timely and accurate information as to the vehicle location.

16. Making matters worse, although relocated vehicles are to be moved to a legal parking spot within a short radius from where they were legally parked, as a matter of practice and custom, some vehicles are relocated to arbitrary locations at considerable distances from their original locations.

17. Further, and again as a matter of practice and custom, and as a result of inadequate training and supervision of police and towing personnel, vehicles are at times placed in illegal or limited time locations, or metered spots. As a result, class members have been

---

area. If you believe your car has been relocated, call the police district of the area where your car was parked.

- **Find my police district**

https://www.phila.gov/services/streets-sidewalks-alleys/get-your-car-back-when-it-has-been-towed/ (last accessed April 24, 2021).

{00219038 }                                                       4

assessed fines, as well as towing and storage fees, after their vehicles were towed under the Relocation Program.

18. As a direct result of the inadequate notice procedures, persons whose vehicles have been relocated will in some circumstances report them as stolen, and as a result, the vehicle is listed in a stolen vehicle database. The City has failed to provide adequate training and supervision to police personnel to ensure that reports of stolen vehicles are cross-referenced with Relocation Program towing information to prevent the car from being categorized as stolen.

19. Even when owners report to the PPD that they have located the vehicle previously reported as stolen, due to lack of proper protocols, training, and supervision, a number of these vehicles have not been removed from the stolen vehicle database, causing their owners to later be detained or arrested by police, who believed the class members were driving stolen vehicles.

20. Due to the City's failure to utilize reasonably practicable procedures (including those already available and in place for other towing operations) to notify owners that their vehicles have been towed and how to find them, Plaintiffs and the class members have had to engage in lengthy searches for their vehicles, during which time they have been deprived of their possessory rights in and use of their vehicles.

21. The City, as a matter of practice and custom has failed to provide adequate procedures to prevent vehicles from being relocated to places where it is illegal to park or in time-limited or metered parking spaces, which unfairly exposes innocent owners to parking infractions.

22. The constitutional violations alleged in this Complaint are ongoing, and without judicial relief will cause harm to the class members who will be subjected to the Relocation Program.

23. As a result of City's policies, practices, and customs with respect to the Relocation Program, Plaintiffs and the class members have suffered an unlawful interference with their Fourth Amendment possessory rights in their vehicles and have been deprived of adequate post-deprivation process in violation of the Due Process Clause of the Fourteenth Amendment.

### Plaintiff Eastman

24. On or about November 9, 2020, Plaintiff Eastman parked her car in a legal, Zone 10 parking space on the 100 block of Arch Street.  On or about November 14, 2020, Plaintiff Eastman returned to the 100 block of Arch Street to use her vehicle, only to find that it was not there.

25. Plaintiff Eastman contacted the Sixth Police District. A police officer informed her that her car had been towed to the 100 block of Water Street, a half mile from where she had originally legally parked it, due to unspecified work being done on the 100 block of Arch Street.

26. Eventually Plaintiff Eastman found her car, not on the 100 block of Water Street, but in a metered parking spot on the 200 block of Arch Street with several tickets on the windshield. These tickets had been issued because her car had been towed by the City to a metered space, through no fault of her own.

**Plaintiff Henin**

27. On or about February 5, 2020, Plaintiff Henin parked her car in a legal parking spot on the 4200 block of Chester Avenue.

28. On or about February 12, 2020, Plaintiff Henin could not locate her car where it had been legally parked. Plaintiff Henin contacted the Eighteenth Police District four or more times. She was told each time that there was no record that her car had been towed. Police personnel at the District directed her to report the car as stolen, which she did.

29. The following day, on or about February 13, 2020, Plaintiff Henin found her car illegally parked at the intersection of 43rd and Pine Streets in a loading zone. Her car had been ticketed.

30. Plaintiff Henin immediately contacted the Eighteenth Police District to inform the PPD that her car had been found. Then the PPD issued a found report for the vehicle and provided it to Plaintiff Henin.

31. Approximately one week later, Plaintiff Henin again called the Eighteenth Police District to confirm that the "found report" had been logged, and that the car was no longer reported stolen. The District personnel confirmed that report.

32. Nevertheless, on or about May 29, 2020, Plaintiff Henin was stopped, forced from her vehicle at gunpoint, and detained by New Jersey police officers, who alleged that the car was stolen based on a still existing PPD report that the vehicle was stolen.

### Plaintiff Hay

33. On or about March 20, 2021, Plaintiff Hay parked her car in a legal parking spot on the 2800 block of Parrish Street in Philadelphia. On or about March 26, 2021, she returned to the 2800 block of Parrish Street to use her vehicle, only to find that it was not there.

34. Plaintiff Hay contacted the Ninth Police District to inquire about her vehicle.

35. A police officer informed her that there was no record that her car had been towed, but that owners of a private lot on 2201 Pennsylvania Avenue had complained on or about March 24, 2021 that her car was illegally parked there. The police officer told Plaintiff Hay that because the 2200 block of Pennsylvania Avenue was a private lot, where one could not legally park, her car had been towed by George Smith Towing company to a private tow lot at 3103 S. 61st Street, several miles from where she had originally, legally parked her vehicle.

36. Plaintiff Hay went to 3101 S. 61st Street to retrieve her car. The towing company required her to pay for her vehicle tow, even though she had been parked illegally through no fault of her own.

37. Plaintiff Hay also received a ticket from the Philadelphia Parking Authority, because her car had been towed by the City and illegally parked at 2201 Pennsylvania Avenue, again through no fault of her own.

### Plaintiff Allen

38. In or around January of 2021, Plaintiff Allen parked his car in a legal parking space at the intersection of 9th and Wilder Streets in Philadelphia. Approximately a week after parking it, Plaintiff Allen returned to the intersection of 9th and Wilder Streets to use his car, only to find that it was no longer there.

39. Plaintiff Allen attempted to locate his vehicle through the Philadelphia Parking Authority website. The website indicated that that his vehicle was parked between Water and Tasker Streets, nowhere near his original parking location, and that as a result of being parked illegally following the tow, Plaintiff Allen had four unpaid parking tickets, through no fault of his own.

40. Plaintiff Allen eventually found his vehicle, which had been illegally double parked, through no fault of his own, for nearly a week.

## CLASS ACTION ALLEGATIONS

41. Plaintiffs seek to represent a class pursuant to Fed. R. Civ. P. Rule 23 (b)(2), defined as follows:

> All persons who, within two years before the filing of this complaint, had their vehicles relocated by the City of Philadelphia under the Relocation Program (the "Class").

42. The members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of people affected is unknown, Plaintiffs believe that Class may number in the thousands.

43. The common questions include:

   a. Whether the City engaged in the conduct alleged herein, and in particular the failure to provide adequate notice of towing, location of vehicles towed, removal to locations where parking was not permitted, and not removing vehicles from "stolen vehicle" databases;

   b. Whether Plaintiffs' and the Class members' rights were violated; and

   c. Whether Plaintiffs' and the Class members are entitled to injunctive or declaratory relief.

44. Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs and all Class members were affected by Defendant's conduct described above and assert the same claims for equitable relief.

45. Plaintiffs and their counsel will fairly and adequately represent the interests of the Class members. Plaintiffs have no interest antagonistic to, or in conflict with, the interests of the Class members. Plaintiffs' attorneys are experienced in the prosecution of class action and civil rights litigation.

46. Class certification under Rule 23(b)(2) is appropriate because the Defendant acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## COUNT I
### Violation of the Fourteenth Amendment
### 42 U.S.C. § 1983

47. Plaintiffs incorporate paragraphs 1 through 46 as though fully set forth herein.

48. The use and enjoyment of one's vehicle (whether one owns or is an operator of such vehicle) is a property right protected by the Due Process Clause of the Fourteenth Amendment.

49. The City has violated the Fourteenth Amendment due process rights of Plaintiffs and the Class members in the implementation of the Relocation Program in the following ways:

   a. The Relocation Program, as a matter of policy, practice, and custom, fails to provide adequate post-deprivation notice to those subjected to towing of their legally parked vehicles;

   b. The Relocation Program, as a matter of policy, practice, and custom, fails to employ reasonably available procedures for keeping records of the location of relocated vehicles and providing such information to owners or operators, thereby depriving owners and operators of any adequate post-deprivation process;

   c. The Relocation Program, as a matter of policy, practice, and custom, fails to provide sufficient safeguards for owners or operators whose vehicles have been towed from legal spaces to spaces that are or become illegal spaces, time limited spaces, or metered spaces and who then are cited for parking infractions and/or have their vehicles impounded; and

      d.      The Relocation Program, as a matter of policy, practice, and custom, fails to provide adequate safeguards against improper listing of towed vehicles as stolen.

## COUNT II
### Violation of the Fourth Amendment
### 42 U.S.C. § 1983

50. Plaintiffs incorporate the allegations of paragraphs 1-49, as though fully set forth herein.

51. The City has violated the Fourth Amendment rights of the Plaintiffs and the Plaintiff Class because the Relocation Program, as a matter of policy, practice, and custom, results in the unreasonable seizure and displacement of their vehicles in the absence of any wrongdoing on their part and in the absence of adequate safeguards to protect against arbitrary loss of possession, use, and enjoyment of the vehicles that have been relocated.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully seek relief in the form of:

    A.    certification of the Class defined above under Fed. R. Civ. P. 23(b)(2);

    B.    declaratory and injunctive relief for Plaintiffs and the Class;

    C.    compensatory damages for Plaintiffs;

    D.    attorneys' fees and costs; and

    E.    any further or other relief that the Court deems just and appropriate.

Dated: May 17, 2021

/s/ Joseph C. Kohn
Joseph C. Kohn
William E. Hoese
Craig W. Hillwig
Aarthi Manohar
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700

{00219038 }

                                            David Rudovsky
                                            Susan M. Lin
                                            KAIRYS, RUDOVSKY, MESSING,
                                              FEINBERG & LIN, LLP
                                            718 Arch Street, Suite 501S
                                            Philadelphia, PA 19106
                                            Telephone: (215) 925-4400

                                            *Attorneys for Plaintiffs*