# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN EASTMAN, et al., | : | |
| Plaintiffs, | : | |
| v. | : | No. 21-2248 (MSG) |
| CITY OF PHILADELPHIA, | : | |
| Defendant. | : | |

## CITY OF PHILADELPHIA'S STATEMENT OF FACTS

**I.  Towing of Plaintiff, Kathleen Eastman's Vehicle**

1. Plaintiff Eastman owned her vehicle and parked it regularly in the Old City neighborhood she has lived in for six years. Ex. A, Deposition of Kathleen Eastman, November 3, 2022 ("Eastman Dep.") 9: 14-16, 27:24-28:1, 10:5-10.

2. Residential parking is difficult in Old City due to numerous restricted parking spaces and high demand. *See* Eastman Dep. at 10:5-10, 11:5-13:18.

3. Plaintiff Eastman describes the Philadelphia Parking Authority ("PPA") as "very active" in her area and tows vehicles regularly. *See* Eastman Dep. at 21:4-22:2.

4. Plaintiff Eastman knew that Temporary No Parking signs are posted and cars are towed for construction, utility work, and film crews but has never moved her car after it was already parked for any of these reasons. *See* Eastman Dep. at 37:24-38:24.

5. Plaintiff Eastman parked her vehicle on Monday, November 9, 2019 and did not return to check it until Saturday, November 14, 2019. *See* Eastman Dep. at 29:5-9, 30:7-15.

6. Plaintiff Eastman did not check whether any Temporary No Parking signs were posted where she parked between when she parked her vehicle and when she returned to retrieve it. *See* Eastman Dep. at 37:24-38:6.

7. Plaintiff Eastman recalls a large construction project across the street that did require cars to move sometimes. *See* Eastman Dep. at 38:7-15.

8. When Plaintiff Eastman did not find her vehicle where she last parked it, she called the local Philadelphia Police Department ("PPD") precinct. An individual who answered the phone told her that her vehicle could have been moved to Water Street due to work in the area. *See* Eastman Dep. at 31:6-10, 32:2-3, 57:4-14.

9. Plaintiff Eastman does not know where the information the Police provided regarding where her vehicle was moved came from. *See* Eastman Dep. at 34:21-24.

10. Plaintiff Eastman could not find her vehicle on Water Street, so her son drove her around the area to look for it for approximately 1 ½ to 2 hours. *See* Eastman Dep. at 31:15-20, 32:12-15.

11. Plaintiff Eastman located her vehicle as a result of this search. *See* Eastman Dep. at 33:3-10.

12. When Plaintiff found her vehicle, it had three parking tickets from the Philadelphia Parking Authority, valued at $36.00 each, issued on separate days for parking in a metered parking space. *See* Eastman Dep. at 33:3-10, 48:11-14, 49:1-50:1.

13. Plaintiff Eastman appealed the tickets, but eventually lost the appeal and paid the tickets with late fees for a total of $330.00. *See* Eastman Dep. at 50:2-19, 51:24.

14. In an effort to identify who towed her vehicle, Plaintiff Eastman contacted five towing companies who all either denied involvement or refused to answer. *See* Eastman Dep. at 59:18-60:2.

15. After a thorough investigation, Plaintiff Eastman does not know who towed her vehicle. *See* Eastman Dep. at 42:2-, 60:3-6.

II. **Towing of Plaintiff, Mary Henin's Vehicle**

16. Plaintiff Mary Henin routinely used and operated a vehicle in the City of Philadelphia, which vehicle was owned by her mother, had a Virginia license plate, and was registered in Virginia. Ex. B, Deposition of Mary Henin, September 7, 2022 ("Henin Dep") at 6:6-17, 19:13-18. This vehicle is hereinafter referred to as the "Henin Vehicle."

17. Plaintiff Henin parked the Henin Vehicle on approximately February 5, 2020 and returned to where it was parked to find it missing on February 12, 2020. *See* Henin Dep. at 23:16-19, 25:11-24, 29:8-10.

18. Plaintiff Henin looked for the Henin Vehicle in nearby locations and located it parked at 43rd and Pine Streets on February 13, 2020. *See* Plaintiffs' Compl, ¶ 29; Henin Dep. at 68:18-22.

19. The Henin Vehicle was towed by an unknown person or entity sometime between February 5 and 12, 2020. *See* Henin Dep. at 23:16-19, 25:11-24, 66:10-15.

20. When Plaintiff Henin found the vehicle, it was parked in a loading zone and one PPD ticket for $52.00 for "towing," which she subsequently paid. *See* Henin Dep. at 68:18-70:1.

21. Plaintiff Henin knows that vehicles may not be parked in areas where Temporary No Parking signs are posted during the times specified on the sign. *See* Henin Dep. at 27:11-22.

22. Temporary No Parking signs were posted on the block where Plaintiff Henin parked her vehicle between when she parked her vehicle and when it went missing. ("Sometime in mid-February (sometime between February 5 and 12, 2020), [there was tree cutting] on my block and had **posted restricted parking notices**. **I had missed the signs, and I did not move my car**… I had suspected that courtesy towing was a possibility **because there was an old 'restricted parking sign' on the ground.** It had been rained on and torn, so I could not read the date on it." Ex. C, Henin Statement, 6/1/2020, City_00126 (emphasis added); *see also* Henin Dep. at 65:24-66:9, 70:5-15.

23. On February 12, 2020, when Plaintiff Henin discovered that her vehicle was missing, she contacted the local PPD precinct and was told that the PPD had no record that it was towed or relocated. *See* Plaintiffs' Complaint ¶28; Henin Dep. at 25:23-24, 31:6-32:7.

### III. Relevant City of Philadelphia Towing Policies

24. There is no official "Relocation Program" in the City of Philadelphia that, as alleged in Plaintiffs' Complaint, incorporates tows by the PPD, Philadelphia Parking Authority, and private towers. Ex. D, Deposition of Matthew White, 10/26/2022 ("White Dep."), 10:8-17, 33:2-13.

25. In Philadelphia, vehicles might be towed when: 1) relocated for parades, special events, major accidents, including tractor-trailers, and disabled vehicles which cause a hazardous situation; and 2) impoundment of vehicles involved with homicides, crime scenes, and accidents requiring investigations. Ex. F, Phila. Police Directive 12.5-1, 6/12/2015; Ex. G, Deposition of Lt. Michael Anderson, October 11, 2022 ("Anderson Dep.") at 10:10-13.

26. Vehicles might also be towed when they are located in spots that are designated as temporarily unavailable for parking. Ex. G, Police Directive 3.7-1, 5/27/2009.

4

27. Specifically, private individuals and contactors may obtain Temporary No Parking signs to create temporary loading zones or street closures, which may be enforced by privately towing a vehicle to a legal parking space nearby after PPD issues a ticket. *See* Anderson Dep. at 52:21-53:5, 105; Ex. H, Deposition of Stephen Lorenz, October 7, 2022 ("Lorenz Dep.") at 13:1-16:8.

28. After a vehicle is relocated by private tow companies, Philadelphia Parking Authority, or the PPD, the towing entity must contact the local police district to provide information about identifying details of the vehicle, the location the vehicle was originally parked, and the location where the vehicle was moved. *See* Lorenz Dep. at 13:1-16:8.

29. Sometimes, private entities such as construction crews fail to properly contact the PPD to ticket illegally parked vehicles, which includes those in Temporary No Stopping spaces, prior to having the vehicles privately towed. *See* Anderson Dep. at 104:11-109:24.

30. The PPD would not know the details of the private tow relocation when a private tow company fails to provide the required information regarding a relocation to the Philadelphia Police. *See* Anderson Dep. at 104:11-109:24.

31. When the City relocates a vehicle, the procedure is for the responding police officer to look up the owner's address prior to ordering the tow to relocate. If the address is local, the officer will knock on the owner's door to see if the owner can move the vehicle. If the address is not local or no one responds, the tow will be ordered. *See* Anderson Dep. at 54:2-55:14.

32. Police officers do not have readily available access to telephone numbers of vehicle owners. *See* Anderson Dep. at 54:2-55:19.

## IV. Relevant City of Philadelphia Tow Logs

33. The City maintains a log of vehicles towed and relocated by the City and private tow entities. This log is populated by the information provided by the PPD, Philadelphia Parking Authority, and the private tow entities that correctly report such information. *See* Lorenz Dep. at 13:1-16:8; Anderson Dep. at 104:11-22.

34. There is no information in the City's tow logs of Plaintiffs' vehicles being towed or relocated on or about the dates claimed in the Complaint.

                                            Respectfully submitted:

Date: 1/19/2023                      /s/Michelle L. Reinhart
                                        MICHELLE L. REINHART
                                        Assistant City Solicitor
                                        CHRISTOPHER JOHNSON
                                        Senior City Solicitor
                                        City of Philadelphia Law Department
                                        1515 Arch Street, 14th Floor
                                        Philadelphia, PA 19102-1595
                                        (215) 683-5106/5118
                                        (215) 683-5299 fax
                                        *michelle.reinhart@phila.gov*
                                        *christopher.johnson@phila.gov*